## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| NTT SECURITY (US) INC., <br><br> Plaintiff, <br><br> v. <br><br> JANCO ASSOCIATES, LLC, <br><br> Defendant. | Civil Action No. _____ <br><br><br> **COMPLAINT** <br> **JURY TRIAL DEMANDED** |

Plaintiff NTT Security (US) Inc. ("NTT"), in support of its declaratory judgment claim against Defendant Janco Associates, LLC ("Janco") states and alleges as follows:

### INTRODUCTION

1. In this action for declaratory relief, NTT seeks a declaration from the Court that (A) the parties hereto entered into that certain Consulting Service Agreement (discussed further below) (the "Consulting Agreement"), (B) NTT has substantially performed its obligations under the Consulting Agreement, (C) Janco is not entitled to any "Finder's Fee" under the Consulting Agreement, (D) Janco is not entitled to any "Commissions" under the Consulting Agreement with respect to the Black Panda and White Hat Transactions (defined in more detail below).

2. Janco has alleged that it is entitled to a Finder's Fee under the Consulting Agreement because Janco, through Jerome Nowicki ("Mr. Nowicki"), allegedly introduced NTT to the acquisition of a company known as White Hat in August 2018. To reach this conclusion, Janco ignores the plain language of the Consulting Agreement, as well as the actual sequence of events underlying this dispute. Janco's contentions fail for multiple reasons, as set forth below. Janco also argues that it is entitled to certain Commissions arising from purported partnerships with (A) a company known as Black Panda, and (B) White Hat. No such partnerships have yet

been entered into or formed, and the claim for Commissions fails for additional reasons set forth below.

## JURISDICTION AND VENUE

3. This civil action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. NTT seeks a declaration from this Court as identified above.

4. This Court may enter the declaratory relief sought by NTT because an actual, live, and justiciable controversy exists between NTT and Janco within the scope of the Court's jurisdiction under 28 U.S.C. § 2201 and 2202, as the parties dispute the issues identified above regarding the Consulting Agreement, all as further described herein.

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties hereto, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

6. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

7. NTT is a Delaware corporation, registered to do business in Nebraska, with a substantial business presence in Nebraska (conducted primarily from its office located at 9420 Underwood Avenue, Omaha, NE 68114). NTT's principal place of business is currently located at 9420 Underwood Avenue, Omaha, Nebraska 68114. NTT is a leading provider of digital and other security solutions for business customers throughout the United States. NTT assists customers throughout the United States in protecting their digital infrastructure, platforms, applications, information, and users from today's advanced threats. NTT provides its customers with a range of services, including strategic consulting, managed security services, and technical consulting.

8. Upon information and belief Janco is a California limited liability company.

9. Upon information and belief, none of the members of Janco are citizens of Nebraska, Delaware, or Connecticut.

10. This Court has personal jurisdiction over Janco for a variety of reasons, including but not limited to, (A) Janco's president, Mr. Nowicki, visited NTT's Omaha, Nebraska office (located at 9420 Underwood Avenue, Omaha, NE 68114) in-person on multiple occasions within the course and scope of Janco's performance under the Consulting Agreement; and (B) Janco submitted invoices for payment under the Consulting Agreement to NTT at NTT's offices located at 9420 Underwood Avenue, Omaha, NE 68114, such invoices were reviewed and approved by the requisite NTT personnel, and payment issued from NTT's offices located at 9420 Underwood Avenue, Omaha, NE 68114.

11. NTT currently has nearly two hundred employees in Nebraska. The dispute at issue in this lawsuit affects NTT, and by extension, such Nebraska-based employees. NTT, which provides a direct and material benefit to the citizens of Nebraska, will suffer real, imminent and material harm to the extent the issues involved in this lawsuit are decided unfavorably to NTT (which they should not be). Thus, Nebraska has a material and meaningful interest in the outcome of this proceeding.

12. Thus, this lawsuit arises out of and relates to a contract (the Consulting Agreement) which has a substantial connection with Nebraska, and a defendant who has meaningful contacts with the State of Nebraska all relating specifically to the Consulting Agreement that is at issue here.

## BACKGROUND FACTS AND KEY CONTENTIONS

13.     On or about August 1, 2016, Janco and NTT entered into the written Consulting Agreement. A true, accurate and complete copy of the Consulting Agreement is attached hereto as **Schedule 1**.

14.     Under the terms of the Consulting Agreement, Janco was to be provided a substantial monthly retainer fee in the amount of thirteen thousand dollars ($13,000), in exchange for which Janco committed to provide NTT with a wide range of specifically enumerated set of services. Consulting Agreement, Exhibit ("Ex.") B § A. Janco's standard monthly services included a range of activities, including advising NTT in building a roadmap for business expansion, assisting NTT in building a successful relationship with other affiliates and, relevant here, the ongoing obligation to routinely "[i]ntroduce and refer NTT Security to key contacts in Janco's customer base[.]" *Id.* at Ex. A § 1.

15.     In addition to this substantial monthly consulting fee, the Consulting Agreement provided that Janco was to receive further forms of compensation, but only if certain express conditions were satisfied.

16.     First, the Consulting Agreement provided that NTT was to pay Janco "commissions on the Net Revenues of deals which represent a gross margin to NTT Security of not less than 10%," subject to a series of rules and limitations. *Id.* at Ex. B § B. These included, among other things, that no such commission was due or payable until "after customer's or third party's acceptance of the products shipped and/or the services rendered by NTT Security…" *Id.* at Ex. B § B.5. In addition, as noted, the deal must result in a gross margin to NTT Security of not less than 10%. *Id.* at Ex. B § B.

17. Second, the Consulting Agreement provided that Janco would receive a "Finder's Fee" in certain extraordinary circumstances. *Id.* at Ex. B § B. The right to a Finder's Fee was memorialized in Exhibit B to the Consulting Agreement, which provided, in relevant part:

> "NTT Security Agrees to pay Janco a finder's fee (the "Finder's Fee") for each acquisition by NTT Security of another legal entity, other than another NTT Security entity (the "Transaction"), if and to the extent the Transaction, **the entity *and* the seller or sellers** were introduced by Janco to NTT Security *in writing and* **the closing of such transaction takes place within twenty-four (24) months of the introduction by Janco.**"

*Id.* (emphasis added).

### NTT's Acquisition of White Hat

18. White Hat Security, Inc. ("White Hat") is a leading application security provider. In or about August 2015, NTT was introduced to White Hat by a third party. Neither Mr. Nowicki nor Janco were parties to that initial introduction and, indeed, the introduction was made before the Consulting Agreement was executed. Over the following years, NTT and White Hat engaged in a series of discussions with White Hat regarding the opportunities for various business partnerships, the majority of which were unsuccessful. In 2018, during one of these meetings, executives from White Hat indicated to NTT that White Hat had engaged investment bankers, and had initiated a strategic process for the potential sale of White Hat to a third party. During the same discussion, White Hat executives offered NTT an opportunity to participate in the strategic process as a prospective bidder. During the sales process, NTT learned of the identities of the Sellers from White Hat and its retained investment bankers.

19. NTT thereafter became the successful bidder and, on July 2, 2019, closed on its acquisition of White Hat (the "White Hat Transaction"). During the sale process, Janco orally asserted on several occasions that it was entitled to a finder's fee upon the transaction's closing. And, on September 11, 2019, Janco sent NTT a demand letter through its outside counsel,

5

demanding immediate payment of a finder's fee in the amount of $1,950,000. A true, accurate and complete copy of Janco's September 11, 2019 letter is attached hereto as **Schedule 2**.

20. Contrary to Janco's assertions in the September 11, 2019 letter and otherwise, Janco is not entitled to any Finder's Fee with respect to the White Hat Transaction. The Consulting Agreement provides that Janco is entitled to a Finder's Fee only "if and to the extent the Transaction, the entity *and* the seller or sellers were introduced by Janco to NTT Security in writing *and* the closing of such Transaction *takes place within twenty-four (24) months of the introduction* by Janco." (Consulting Agreement at Ex. B, ¶ C) (emphasis added).

21. None of these elements are satisfied. First, NTT was introduced to White Hat by a third party, and not Janco. Second, rather than Janco, the acquisition transaction was introduced by White Hat itself. Third, Janco never introduced NTT to the sellers — the sellers were introduced by White Hat and its investment bankers. Further, NTT was introduced to, and had interacted with, White Hat since August 2015, nearly four years before the White Hat Transaction closed, and far longer than the 24 month period from introduction in which a Finder's Fee is payable under the express limitations imposed by the Consulting Agreement.

22. In addition, in the September 11, 2019 Letter, Janco asserted for the first time that it was entitled to commissions on the revenue received by NTT from two transactions: transactions with Black Panda (the "Black Panda Transaction"), and transactions with White Hat Security Third Party Risk Services and the Sourcing Industry Group (the "SIG Transaction"). Neither of these potential transactions has been entered into, nor has NTT received any revenue on any such transaction (and, indeed, no such transaction may occur). Under the express terms of the Consulting Agreement, however, no commission was due or payable until "after customer's or third party's acceptance of the products shipped and/or the services rendered by

NTT Security…" *Id.* at Ex. B § B.5. Further, a commission is only due where Janco introduced the opportunity in writing, which condition Janco never satisfied. *Id.* at Ex. B § B.1. Accordingly, Janco is likewise not entitled to any of the claimed commissions.

## CLAIM FOR DECLARATORY RELIEF

23. NTT incorporates the forgoing paragraphs as if set forth fully herein.

24. An actual controversy of a justiciable nature exists between NTT and Janco regarding whether (A) the parties hereto entered into the Consulting Agreement, (B) NTT has substantially performed its obligations under the Consulting Agreement, (C) Janco is entitled to any "Finder's Fee" under the Consulting Agreement, (D) Janco is entitled to any "Commissions" under the Consulting Agreement with respect to the Black Panda and White Hat Transactions (as defined above).

25. NTT has disputed, and continues to dispute, Janco's entitlement to either a Finder's Fee or the Commissions.

26. The issues and disputes presented in this Complaint present a justiciable controversy that may be determined by a judgment declaring the rights and obligations of the parties.

## PRAYER FOR RELIEF

WHEREFORE, NTT Security (US) Inc. ("NTT") requests that the Court enter a declaratory judgment in its favor and against Janco Associates, LLC ("Janco"), as follows:

1. Declare that the parties hereto entered into the Consulting Agreement;

2. Declare that NTT has substantially performed its obligations under the Consulting Agreement;

3. Declare that Janco is not entitled to any "Finder's Fee" under the Consulting Agreement;

4. Declare that Janco is not entitled to any "Commissions" under the Consulting Agreement with respect to the Black Panda and White Hat Transactions (as defined above);

5. Award NTT its costs and fees as allowed by law; and

6. Award such other and further equitable relief as the Court deems just and proper.

### JURY DEMAND

NTT demands a jury on all issues so triable in Omaha, Nebraska.

Dated November 5, 2019.

NTT SECURITY (US) INC., Plaintiff,

Jason D. Strabo (*Pro Hac Vice* Application to Be Submitted)
MCDERMOTT WILL & EMERY
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Jstrabo@mwe.com

AND

By: _____
John V. Matson, #25278
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
John.Matson@koleyjessen.com
Attorneys for Plaintiff.